IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LINDA P. KNIGHT**     **PLAINTIFF**

V.     NO. 4:21-cv-152-JMV

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*     **DEFENDANT**

**FINAL JUDGMENT**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding an application for Title II disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is affirmed.

Plaintiff applied for Title II disability insurance benefits in March 2020. She alleged disability since March 6, 2020, due to impairments, including degenerative bone disease, hearing loss, high blood pressure, heart problems, carpal tunnel syndrome, and back problems. *See* Tr. at 169-172, 189. Plaintiff's insured status for purposes of Title II disability benefits expired on December 31, 2020. *See* Tr. at 36, 169, 196-197.

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The agency denied Plaintiff's applications on initial determination and reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted via telephone on March 9, 2021. *See* Tr. at 67. Plaintiff appeared and testified with the assistance of a representative, and vocational expert Kathryn Dillon also appeared and testified.

Following the hearing, the ALJ issued a decision on April 28, 2021, concluding that Plaintiff was not disabled for purposes of the Social Security Act through the date of the decision. *See* Tr. at 34-44. Applying the sequential evaluation set forth in the Commissioner's regulations at 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity through the date of the decision. *See id.* at 37. At step two, the ALJ found that Plaintiff had the severe impairments of hearing loss, carpal tunnel syndrome, osteoarthritis of the knee, and obesity. *See id.* at 37-38. The ALJ also found that Plaintiff's medically determinable impairments of back disorder, cardiac disorder, and depression were not severe. *Id.* at 38-40. At step three, the ALJ found that Plaintiff's impairments did not meet a listed impairment. *Id.* at 40-41.

The ALJ then assessed Plaintiff's residual functional capacity, finding that Plaintiff retained the ability to perform light work with the additional restrictions of "no climbing ladders, ropes, or scaffolds; occasional crawling; only frequent handling and fingering; and should perform no job when noise level would interfere with hearing normal human speech." Tr. at 41-43. At step four, the ALJ found that Plaintiff retained the ability to perform her sedentary past relevant work of court clerk and receptionist. *See id.* at 44. Accordingly, the ALJ found that Plaintiff was not disabled and denied her benefits application. *See id.*

On September 15, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See id.* at

11-16. In the notice, the Appeals Council acknowledged that Plaintiff had presented additional evidence to the agency after the ALJ's decision and found that this evidence either was already present in the record, did not address the time period addressed by the ALJ's decision, or did not show a reasonable probability that it would change the outcome of the ALJ's decision. *See id.* at 8; 20 C.F.R. § 404.970(a)(5). The Appeals Council did not accept review for consideration of this evidence and did not exhibit Plaintiff's submission as evidence of record. *See* Tr. at 8. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Her claims as summarized by the commissioner are: (1) that her date last insured should be extended; (2) her diagnoses of depression, tinnitus, high blood pressure, and a cardiac bundle branch block should have been recognized as severe impairments; (3) the ALJ did not properly assess her disability status; and (4) the Appeals Council should have accepted review based on her submission of additional evidence. *See* Pl.'s Br. at 1-3. [19].

Regarding her first claim, Plaintiff argues that, due to the recent pandemic, the expiration date of her Title II disability insured status should be extended. But, as the Commissioner points out, Plaintiff appears to be of the mistaken impression that a claimant's date last insured is a litigation or evidentiary deadline. *See id.* at 11 (arguing that she "would have been able to get all her evidence. . . before her date last insured" if not for the pandemic). Instead, the date last insured represents the end of a defined period of time during which an individual may establish entitlement to Title II disability insurance benefits, and has no bearing on when, or whether, a claimant can present evidence to the agency. *See* 42 U.S.C. §§ 416(i)(3), 423(c). To the extent Plaintiff seeks to challenge the agency's findings and actions regarding her submissions of additional evidence, those issues are addressed below.

As concerns the allegation that the ALJ improperly found some of her medically determined impairments to be non-severe, it is well established that to establish that a severe impairment is present, a claimant must meet the burden of demonstrating: (1) a functional impairment; (2) that is attributable to a medically determinable impairment; and (3) which limits the ability to perform basic work activities. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The burden of establishing the presence of a medically determinable impairment with acceptable medical evidence is on the claimant. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004).

The ALJ found that Plaintiff's severe impairments were hearing loss, carpal tunnel syndrome, osteoarthritis of the knee, and obesity. *See* Tr. at 37-38. Plaintiff argues that the ALJ should have found the following additional impairments to be severe: depression, tinnitus, high blood pressure, and a left bundle branch block of the heart. *See* Pl.'s Br. at 2-7, 12-13.

But Plaintiff does not cite clinical evidence showing that her ability to perform work activities was limited by these impairments during the relevant period, March 2020 through December 2020. For example, the ALJ noted Plaintiff's reports of back and chest pain but found that the medical evidence showed no history of functional loss attributable to these issues. *See* Tr. at 38-39. In August 2020, Plaintiff sought treatment for complaints of low back pain since June 2020 and was given a lumbar corset, yet, at an October 2020 appointment, Plaintiff had normal movement with no tenderness or pain in the lumbosacral spine on examination. *See id.* at 502. And, at Plaintiff's November 2020 internal medicine appointment, her physical examination showed upper extremity issues rather than lower back issues. *See id.* at 565-567. While Plaintiff reported a "spinal injury" at the March 2021 hearing, x-rays of Plaintiff's cervical spine in November 2020 showed no acute abnormalities. *See id.* at 75-76, 512.

Further, while Plaintiff sought treatment at the Delta Regional Medical Center Emergency Department in February 2020 for complaints of chest pain, described as "a tightness in the left side of her chest which has been present since yesterday evening," and an electrocardiogram examination showed a left bundle branch block sinus rhythm consistent with a prior examination in 2018, she was discharged with an impression of "chest discomfort," and was advised to follow up with her primary care physician. *See* Tr. at 321, 323-325, 327, 361. At cardiology appointments in March 2020, Plaintiff reported occasional dyspnea, chest pain, and chest tightness but testing revealed a 54% ejection fraction with only mild to moderate regurgitation in the aortic, mitral, and tricuspid valves. *See id.* at 375-376, 378, 383. There were no further cardiology appointments documented in the record, and Plaintiff reported no episodes of chest pain to her treatment providers during her August, October, and November 2020 medical appointments. *See id.* at 500-501, 565-567, 592-593.

Regarding depression, the ALJ noted that this condition had been diagnosed, but found that it imposed no more than mild limitations on Plaintiff's mental functioning. *See id.* at 39-40. The ALJ based this finding on essentially normal mental status examination findings during the relevant period despite her diagnosis of depression. *See id.* at 39. The record shows that Plaintiff denied anxiety or depression at an August 2020 appointment. *See id.* at 592. Plaintiff was prescribed Zoloft in October 2020 after she reported "bad thoughts," a decreased energy level, and poor sleep to Dr. Karim. *Id.* at 500-502. However, the Commissioner points out that Dr. Karim did not note any abnormal mental status findings in his treatment report. *See id.* at 502. Nurse Kang reported in November 2020 and January 2021 that Plaintiff had normal speech and behavior, restricted affect, intact attention and concentration, poor long-term memory, and no thought

abnormalities. *See id.* at 547, 572. I agree that these findings are not inconsistent with the ALJ's assessment of no more than mild mental limitations attributable to depression. *See id.* at 39.

Regarding tinnitus, the ALJ noted, as did the DDS examiners on initial and reconsideration, that this symptom was present in association Plaintiff's hearing loss, and limited Plaintiff to environments, in the case of the DDS examiners, without moderate exposure to noise or, in the case of the ALJ, that would not interfere with hearing normal speech. *See id.* at 42. Thus, as the Commissioner notes, the hearing decision addresses tinnitus in the context of Plaintiff's hearing loss, which was recognized as a severe impairment and addressed in the residual functional capacity assessment, without regard to whether each associated symptom was recognized as "severe" or not. *See* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity").

Accordingly, Plaintiff has shown no harmful error resulting from her claim that tinnitus was excluded from the list of severe impairments at step two. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (reversal of an administrative decision on account of error is not automatic but requires a determination of prejudice); *Morris v. Bowen*, 864 F.2d 333,335 (5th Cir. 1988) (procedural perfection is not required in administrative proceedings). Plaintiff cannot show prejudice because the impact of her hearing loss was properly reflected in the ALJ's residual functional capacity assessment. *See* Tr. at 41-43; *see Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (rejecting claim of incorrect severity findings as "disingenuous" where ALJ applied the full sequential evaluation process); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (claim that incorrect severity standard was applied "irrelevant" because case progressed to step four); *Shipley v. Secretary of HHS*, 812 F.2d 934,935 (5th Cir. 1987) (court rejected objections based on severity standard where the ALJ applied full sequential evaluation process).

As for Plaintiff's argument that the ALJ did not properly consider her reported pain and medication side effects when assessing her claim, the record reflects that in her April 2020 Function report, she stated that she needed to sit in a recliner to reduce leg swelling, and that she was limited in her ability to lift, use her hands, walk, sit, stand, bend, and climb stairs. *See* Tr. at 199, 204. At the March 2021 hearing, Plaintiff stated that she was essentially unable to use her hands for lifting, carrying, or actions such as brushing her teeth or turning doorknobs. *See id.* at 73-74,79-80.

But, the ALJ considered these allegations regarding her symptoms, and found that the record did not support the degree of impairment that Plaintiff had alleged. *See id.* at 42. In making this finding, the ALJ noted that in the August 2020 visit she reported that her wrist pain was "well controlled" with use of wrist splints and the record reflects a lack of clinical findings showing functional limitations in Plaintiff's extremities. *Id.* at 42, 592. Physical examinations in March 2020 by Benjamin Folk, III, M.D., reported no swelling or neurological issues. *See id.* at 376, 379. Examination by Joshua Butler, D.O., in August 2020 showed no edema and normal gait. *See id.* at 450. Physical examinations by Parvez Karim, M.D., in February 2020, October 2020, and January 2021 showed normal muscle strength in the extremities with no edema. *See id.* at 497-498, 501-502, 504-505. Examination by Rochelle Thompson Kolawole, M.D., in November 2020 showed stable gait and no swelling, but did note reduced upper extremity strength. *See id.* at 565-566. Nurse Practitioner Kang examined Plaintiff in November 2020 and noted normal gait and station and normal extremity strength. *See id.* at 572.

Regarding other alleged symptoms, at the March 2021 hearing, Plaintiff stated that she had leg and back pain, but did not describe any issues with ambulation or lower extremity swelling. *See id.* at 77-82. The ALJ noted that osteoarthritis of the knees had been shown on medical

imaging, but Plaintiff's objective clinical findings during, or immediately before and after, the relevant period showed no deficits in gait, normal extremity movement and strength, and no extremity swelling. *Id.* at 42-43, 322-323, 376, 379, 450, 497-498, 501-502, 504-505, 565-566, 572.

In short, Plaintiff's medical reports during the relevant period, and the findings therein, contradict Plaintiff's claims of significant symptoms and physical limitations due to her impairments, and it was not error to find a lack of consistency between Plaintiff's alleged symptoms and the findings in her contemporaneous medical records. *See* 20 C.F.R. § 404.1529(c)(4) ("we consider all your symptoms. . . and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence"). When a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the agency] will determine that the [claimant's] symptoms are less likely to reduce his or her capacities to perform work-related activities." Social Security Ruling 16-3p, 2017 WL 5180304, at *7.

Regarding medication side effects, Plaintiff fails to cite instances of allegations of the same during the relevant period. *See* Pl.'s Br. at 2, (citing Exhibit 3F at 37, Exhibit 10F at 17, Exhibit 11F at 62). Page 37 of Exhibit 3F is a May 2019 x-ray report and page 17 of Exhibit 10F is a February 2020 treatment record in which Plaintiff stated that she would not take Lisinopril, and page 62 of Exhibit 11F is part of a November 2020 treatment report in which her prescription for meloxicam (Mobic) was renewed. *See* Tr. at 347, 496, 567. As the Commissioner points out, while Plaintiff notes that meloxicam can cause "mood change and low energy," she does not cite to any instances where she reported such side effects to her treatment providers. *See* Pl.'s Br. at 10. Similarly, Plaintiff notes that prednisone can "weaken your immune system," but cites no medical

evidence that her immune system was compromised. *See* Pl.'s Br. at 6. A reference to potential or possible medication side effects does not establish that side effects were present for a particular claimant. *See Young v. Secretary of HHS*, 957 F.2d 386, 393 (7th Cir. 1992) (claimant's reliance on a medical reference source about possible side effects of medication not persuasive because "the claimant does not complain that he suffers from those side effects").

Plaintiff also contends that she experiences foot and ankle swelling due to her medications but does not cite any instances where such swelling was observed to be present during the relevant period. *See* Pl.'s Br. at 10. To the contrary, Plaintiff's contemporaneous medical examinations report an absence of edema or swelling. Tr. at 376, 379, 450, 497-498, 501-502, 504-505, 565. The ALJ found that Plaintiff was limited to light exertional work that did not require climbing ladders, ropes, or scaffolds; required no more than occasional crawling; required no more than frequent handling and fingering; and was performed in an environment where the noise level would not interfere with hearing normal speech. *See id.* at 42. In her brief, Plaintiff asserts that she is unable to use buttons, cannot make a fist, can only occasionally write, and has lost the ability to perceive temperature in her hands. *See* Pl. Br. at 6. Plaintiff also asserts that she is unable to sit without constantly shifting, cannot stand or walk for long periods, must keep her legs elevated, and has difficulty with stooping or bending. *See id.* at 6, 10. But, again, the extreme physical limitations Plaintiff claims in her brief are simply not documented in her contemporary medical records, which show no deficits in gait, normal extremity movement and strength, and no sensory or motor deficits, with the exception of reduced upper extremity strength noted by Dr. Thompson Kolawole in November 2020. *See* Tr. at 376, 379, 497-498, 501-502, 504-505, 565-566, 572. The ALJ's residual functional capacity assessment is consistent with the degree of limitation reflected in the clinical findings that appear in Plaintiff's contemporary medical records. *See id.* at 42.

Regarding Plaintiff's ability to hear, the ALJ noted a January 2020 audiogram that showed moderate hearing loss on the right, and mild hearing loss on the left. *See id.* at 37, 290, 305-306. The ALJ accommodated Plaintiff's hearing loss by limiting her to work performed in an environment where the noise level would not interfere with hearing normal speech. *See id.* at 42. At the March 2020 hearing, VE Dillon confirmed that Plaintiff's past work as a court clerk and receptionist could be performed with this limitation. *See id.* at 83.

The ALJ properly relied on this testimony to find that Plaintiff was not disabled. *See id.* at 44. Plaintiff asserts that the ALJ's hypothetical questioning of VE Dillon "does not reflect all of [her] limitations," but does not identify any specific limitations that she contends should have been included in her residual functional capacity. *See* Pl. Br. at 2.

As concerns the Appeals Council declining review Based On Additional Evidence, the Commissioner explains that under the revised regulatory framework, claimants are required to provide, or at least inform the ALJ about, the medical evidence they intend to present in support of their claim at least five business days before the hearing. *See* 20 C.F.R. § 404.935(a). When a claimant fails to inform the ALJ of evidence at least five business days before the hearing, the ALJ may decline to consider or obtain the evidence. *Id.*

In the instant case, Plaintiff appeared at the March 2021 hearing with a representative, identified as Vassie Pegues. *See* Tr. at 67-69. Ms. Pegues informed the ALJ that some of Plaintiff's medical records were still pending, and the ALJ held the record open for 20 additional days. *Id.* at 69. These records were submitted on March 29, 2021 and appear in the record as Exhibit 11F. *See id.* at 14 at 34, 48, 506. Despite the record having been closed to further evidence, Ms. Pegues subsequently submitted additional medical records on April27, 2021. *See id.* at 49. The ALJ issued Plaintiff's hearing decision on April 28, 2021. *See id.* at 31. Plaintiff argues that the ALJ erred by

not considering her additional evidence. *See* Pl. Br. at 2. But submissions of evidence made after the five-business day deadline must be excused by a showing that the agency misled the claimant, there were limitations that precluded the prior notice of the evidence, or that unusual or unexpected circumstances prevented the timely submission of the evidence in question. *See* 20 C.P.R. § 404.935(b). Ms. Pegues' submission did not acknowledge the requirements of §404.935 and articulated no excusable reason for the untimely submission of Plaintiff's additional evidence under § 404.935(b). *See* Tr. at 49. Plaintiff cannot show that the ALJ erred by omitting her submission of additional evidence from consideration. Ms. Pegues then submitted Plaintiff's additional evidence to the Appeals Council. *See id.* at 23. The Appeals Council acknowledged receipt of Plaintiff's additional evidence and found that it did not satisfy the criteria for review based on a submission of additional evidence. *See id.* at 8. Pursuant to 20 C.F.R. § 404.970(a)(5), the Appeals Council may only accept review based on a claimant's submission of additional evidence if it determines that the evidence in question is: (1) new; (2) material; (3) relates to the period on or before the ALJ's decision; and (4) creates a reasonable probability that it would change the outcome of the decision. Significantly, Ms. Pegues' July 2021 submission of additional evidence to the Appeals Council did not acknowledge that § 404.970(a)(5) was controlling and attempted no showing that the criteria for review had been satisfied. *Id.* at 14. Instead, Ms. Pegues requested that the Appeals Council "admit this evidence into the record since it was not available at the hearing." *Id.* at 14.

The Appeals Council declined review based on Plaintiff's submission of additional evidence, finding that some evidence was not new, as it duplicated documents already present in the administrative record, other evidence originating from April 2021 to June 2021 did not relate to the relevant time period that ended with December 2020, and the remaining evidence did not

show a reasonable probability that it would change the outcome of the ALJ's decision. *See id.* at 8.

Plaintiff contends the Appeals Council erred by not admitting her additional evidence. *See* Pl.'s Br. at 3, 7-9.[2] However, neither Plaintiff nor Ms. Pegues acknowledged or attempted to comply with the revised standard for Appeals Council review of submissions of additional evidence.[3] *See* Tr. at 14. It appears Plaintiff and her representative incorrectly assumed that there had been no change from the prior regulations, which permitted a broader range of submissions and required that the Appeals Council review the expanded record. *See, e.g., Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). Under the revised 20 C.F.R. § 404.970, there is no longer any requirement that the Appeals Council re-evaluate the evidentiary record along with submissions of post-hearing evidence as part of its review. *See* 20 C.F.R. § 404.970; 81 Fed. Reg. at 90988. Instead, the claimant who submits additional evidence to the Appeals Council has the burden of showing that the evidence in question is new, material, relates to the period on or before the ALJ's decision, and demonstrates a "reasonable probability that the additional evidence would change the outcome of the decision" before the Appeals Council may accept review for consideration of that evidence. *Compare* 20 C.F.R. § 404.970(b) (2016) with 20 C.F.R. § 404.970(a)(5) (2020). That burden was not met in this case. Tr. at 14.

---

[2] Plaintiff also complains that the agency did not promptly provide her with a copy of her claim file requested in May 2020, and that her ability to seek Appeals Council review was thereby delayed. *See* Pl.'s Br. at 3, 7, 11. However, Plaintiff was represented at the time of this request, and her representative timely requested Appeals Council review. *See* Tr. at 166.

[3] These revisions represent a change in the agency's procedures for Appeals Council review, which became effective on January 17, 2017, with compliance required by May 1, 2017. *See* 81 Fed. Reg. 90987, 90988 (2016).

Plaintiff has offered no showing that the Appeals Council failed to properly apply the revised regulations governing its consideration of submissions of additional evidence. There is no reversible error.

For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 18th day of July, 2022.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**